(78 South. 408)

SOUTHERN EXPRESS CO. v. MALONE.[*] (8 Div. 375.)

(Court of Appeals of Alabama. Nov. 21, 1917. On Rehearing, Feb. 26, 1918.)

1. CARRIERS �köm46½ — CARRIAGE OF GOODS — FAILURE TO DELIVER RECEIPT — CARMACK AMENDMENT.

An express company's failure to deliver a receipt to a shipper as required by the Carmack Amendment to the Interstate Commerce Act (Act Feb. 4, 1887, c. 104, § 20, 24 Stat. 386, as amended by Act June 29, 1906, c. 3591, § 7, 34 Stat. 593 [U. S. Comp. St. Supp. 1911, p. 1288]) imposes on the company the highest responsibility, and the law implies from the conduct of the parties an obligation on its part to deliver to the consignee at the address shown on the shipment within a reasonable time; proof of delivery to a connecting carrier not exempting from liability for damages from negligent delay.

2. APPEAL AND ERROR ⊂⊃216(6)—OBJECTIONS BELOW—VARIANCE.

Error in refusing defendant the affirmative charge requested by it because of a variance cannot work reversal, where it did not comply with new circuit court rules 33 and 34, requiring it to bring the variance to the attention of the court by proper objection to the evidence.

3. CARRIERS ⊂⊃104 — CARRIAGE OF GOODS — ACTION FOR DELAY—EVIDENCE.

In a shipper's action against an express company for damages from negligent delay, a copy of the rates of the company, on file with the Interstate Commerce Commission, was inadmissible, the shipper not suing for a total loss, but for damages caused by negligent delay, and the agreed value of the shipment shedding no material light on such inquiry.

4. CARRIERS ⊂⊃105(1)—CARRIAGE OF FREIGHT —NEGLIGENT DELAY—DAMAGES.

In recovering damages for delay, the shipper was not limited to interest on the value of the shipment during the period of the delay, the

theory of the action being negligence on the part of the express company, some counts alleging simple negligence, others charging wanton delay.

5. CARRIERS ⊂⊃104—CARRIAGE OF FREIGHT— WANTON DELAY—EVIDENCE.

Evidence, and the inferences to be drawn therefrom, held sufficient to authorize a finding that the express company acted with reckless indifference to the shipper's rights in failing to deliver, and with such disregard of the consequences as to amount to wantonness authorizing punitive damages.

6. CARRIERS ⊂⊃105(1)—CARRIAGE OF GOODS— WANTON DELAY—PUNITIVE DAMAGES.

An express company's wanton delay in delivering a shipment authorizes the imposition of punitive damages in the shipper's action against it for the delay.

7. APPEAL AND ERROR ⊂⊃1004(1)—REVIEW— PUNITIVE DAMAGES — DISCRETION OF JURY.

The imposition of punitive damages is discretionary with the jury, and, if fixed with due regard to the wrong, in the light of the evidence, with a view to punishment to prevent similar wrongs, the discretion of the jury as to the amount should not be disturbed.

8. APPEAL AND ERROR ⊂⊃928(2)—PRESUMPTIONS—ORAL CHARGE.

The court's oral charge not being set out in the record, the Court of Appeals must assume that the issues were properly and carefully placed before the jury by appropriate oral instruction.

On Rehearing.

9. DAMAGES ⊂⊃94—PUNITIVE DAMAGES—DISCRETION OF JURY.

Though the amount of punitive damages is within the sound discretion of the jury, such discretion is not unbridled or arbitrary.

10. CARRIERS ⊂⊃105(3) — PUNITIVE DAMAGES —EXCESS.

In a shipper's action against an express company for negligent delay amounting to wantonness in shipping an automobile magneto for repairs to the maker, punitive damages in the amount of $490 were excessive by $240, and will be reduced, or the case reversed, under Acts 1915, p. 610.

Appeal from Circuit Court, Morgan County; R. C. Brickell, Judge.

Action by B. L. Malone against the Southern Express Company for damages for failure to deliver goods. From a judgment for plaintiff assessing damages in the sum of $490, defendant appeals. Affirmed conditionally upon plaintiff's entering remittitur of all damages in excess of $250, which was done.

Eyster & Eyster, of Albany, for appellant. John R. Sample, of Hartsells, and Tennis Tidwell, of Albany, for appellee.

BRICKEN, J. This is a simple suit against a common carrier for the alleged negligent and wanton failure of the carrier to deliver a coil and magneto, within a reasonable time, whereby it is charged that plaintiff's automobile was rendered useless for a long time. The record contains 92 pages, and the appellant assigns 81 errors, practically all of which are argued and insisted upon. Appellee's

---

⊂⊃For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes
[1] Ante, p. 392.    [*]Certiorari denied 201 Ala. 700, 78 South. 990.

counsel have not seen fit to file a brief in reply to the superabundance of alleged errors that have been assigned by the appellant. We must therefore of necessity enter upon this mystic maze of technicalities, unaided by the hand of appellee's counsel, who are usually most friendly to the rulings of the trial court.

It appears that on the 9th of September, 1911, B. L. Malone delivered a box containing a coil and magneto to the appellant's agent at New Decatur, Ala. The shipment was consigned to "C. F. Spitdorf, 138 Street and Walton Avenue, New York." The shipment was not delivered at that address until November 23, 1911. The purpose of the shipment was to have the coil and magneto repaired, after which it was to be returned to Mr. Malone.

The defendant (appellant) introduced evidence tending to show the shipment reached New York on September 14, 1911, and that its connecting carrier, the Adams Express Company, tendered it on that day to C. F. Spitdorf, at No. 261 Walton avenue, and that the consignee refused to accept it at that place, because the name of the consignor, as the appellant claims, did not appear on the outside of the box. Before the shipment was accepted for carriage at New Decatur, plaintiff's evidence tended to show that he called appellant's agent over the telephone, and informed him of the purpose, nature, and character of the shipment, and that his automobile would be idle until the shipment was returned, and of the great necessity of promptness in the carriage of the article. The shipment was sent to the express office at New Decatur by a negro, who testified that he paid the charges of the shipment, amounting to $2, to appellant's agent, and that the agent told him "that he wouldn't give me a receipt; that it would be all right with Mr. Malone; that he [the agent] was out of receipts." Efforts were made to trace the shipment; it was finally located, repaired, and returned to Mr. Malone 84 days after it was delivered to appellant on the 9th day of September, 1911.

The appellant contends: (1) That the shipment was governed by the act of Congress of June 29, 1906, and that, no receipt having been issued as required by that act, the appellant could not be held to be a common carrier, and therefore there was a variance between the allegation and proof which entitled appellant to the affirmative charge.

[1] The pertinent part of the act of June 29, 1906 (U. S. Comp. Stat. Supp. 1911, p. 1288), known as the "Carmack Amendment," is as follows:

"That any common carrier, railroad, or transportation company receiving property for transportation from a point in one state to a point in another state *shall issue a receipt* or bill of lading therefor and *shall be liable to the lawful holder thereof for any loss, damage or injury to such property caused by it, or by any common carrier*, railroad, or transportation company to which such property may be delivered, or over whose line or lines such property may pass," etc. (Italics supplied.)

We then come to the question: What is the effect of the carrier's failure to issue a receipt in this case? The carrier contends that its own violation of the act exempts it from liability as a common carrier; that it is only liable as a common carrier to one who receives a receipt, as provided by law. We cannot so reward the appellant for its nonobservance of the law.

The failure to deliver a receipt, as required by the act, should impose upon the carrier the highest responsibility, not the least, and in such case the law would imply, from the conduct of the parties, an obligation on its part to deliver the shipment to the consignee, at the address shown on the shipment, within a reasonable time, and proof of delivery to a connecting carrier would not exempt appellant from liability for damages proximately resulting from a negligent delay.

[2] If appellant requested the affirmative charge because of a variance, the rules (new circuit court rules 33 and 34) required it to bring the variance to the attention of the court by proper objection to the evidence. This was not done, and the error, if any there was, cannot work a reversal.

[3, 4] The appellant offered to introduce in evidence a certified copy of the rates of the Southern Express Company on file with the Interstate Commerce Commission, on April 3, 1914, effective in 1911, all of which was excluded by the court.

We are not of the opinion that the learned trial court was in error. The appellee was not suing for a total loss, but for damages caused by a negligent delay, and the agreed value of the shipment, if such there was, shed no material light on this inquiry. Appellant urges that it should have been permitted to show this agreed value, for the reason, as it contends, the only damages appellee could recover would be interest on the value of the shipment, which was about $125, during the period of delay. In this counsel are in error. The theory of the action is negligence on the part of the carrier. Some counts in the complaint allege simple negligence; others charge a wanton delay. In such cases:

"The tort-feasor is liable for any damages consequent upon his act which are directly traceable to it, if they could reasonably have been anticipated as likely to be the result of his neglect or failure to perform his duty." Carr & Co. v. Southern Railway, 12 Ga. App. 830, 79 S. E. 41; Armstrong v. Ry. Co., 123 Ala. 233, 26 South. 349; Briggs v. B. R., L. & P. Co., 188 Ala. 269, 66 South. 95; Bacon v. Pullman Co., 159 Fed. 1, 89 C. C. A. 1, 16 L. R. A. (N. S.) 578, 14 Ann. Cas. 516.

[5, 6] The appellant complains of the refusal of the lower court to charge out the wanton count in the complaint. It was open to the jury to find, among other things, that the shipment arrived in New York in four or five days after it was received by appellant, and that no effort was made to deliver

it at its proper address until November 23d following, two months and ten days later, that it could have been delivered at its proper destination, on any business day, and that the employés in the office at the point of destination knew that the shipment was there, and that the appellant company had been informed, prior to its delivery to it at New Decatur, of the nature, character, and purpose of the shipment, and it knew that appellee's automobile would be practically idle until the magneto was returned, and that appellee paid for, and expected, reasonably prompt service.

We are of the opinion that this evidence and the inferences to be drawn therefrom were sufficient to authorize a finding by the jury that appellant acted with reckless indifference to plaintiff's rights, and with such disregard of the consequences as to amount to what the law calls wantonness, which authorizes the imposition of punitive damages in a case of this kind. Gary v. Wells Fargo Express Co. (Tex. Civ. App.) 40 S. W. 845; Stricker v. Leathers, 68 Miss. 803, 9 South. 821, 13 L. R. A. 600; Sutherland on Damages (4th Ed.) § 930, and authorities cited.

[7] So far as the amount of the verdict is concerned, it is evident, from an examination of the whole evidence, that the jury saw fit, in the exercise of its discretion, to impose such damages.

"The imposition of punitive damages is discretionary with the jury, and is a thing apart from the compensation allowed for the injury suffered; and if fixed, with due regard to the wrong perpetrated, in the light of the evidence upon which [it] the finding is predicated, with a view of punishment to the end of preventing similar wrongs, the judgment and discretion of the jury in determining the amount should not be disturbed by a court." N. C. & St. L. Ry. v. Blackmon, 7 Ala. App. 530, 61 South. 468; Coleman v. Pepper, 159 Ala. 310, 49 South. 310.

[8] The evidence relating to a quotient verdict has been considered with care, and we are of the opinion that no reversible error appears. The charges given at appellant's request certainly were as favorable as it could expect. The measure of damages was very limited, and, the court's oral charge not being set out in the records, we must assume that the issues were properly and carefully placed before the jury by appropriate oral instruction. Such being the case, we cannot say that we are convinced that any ruling complained of "has probably injuriously affected the substantial rights of the parties," so far as the actual trial of the case is concerned. Best Park and Amusement Co. v. Rollins, 192 Ala. 534, 68 South. 417, Ann. Cas. 1917D, 929.

The judgment of the circuit court is therefore affirmed.

Affirmed.

## On Rehearing.

BRICKEN, J. [9] The only damages the plaintiff was entitled to recover under the charge of the court were nominal damages, and the jury was authorized, under this charge, to assess punitive damages, which are allowed as a punishment to prevent the commission of aggravated wrongs, and while the amount to be assessed is a matter within the sound discretion of the jury, such discretion is not unbridled or arbitrary. Cox v. B. R., L. & P. Co., 163 Ala. 170, 50 South. 975.

[10] After a careful consideration of the evidence in this case on rehearing, the opinion prevails that the damages assessed in this case, in view of the nature of the alleged wrong, are excessive, and that a duty rests upon the court, under the provisions of the act approved September 17, 1915, to reduce the damages or reverse the case. Acts 1915, p. 610.

An order will therefore be entered overruling the application, upon condition that the appellee, within ten days from this date, file with the clerk of this court a remittitur of all damages recovered in excess of $250. If such remittitur is not filed within that time, the judgment granting the application for rehearing will be entered, and the judgment of the trial court will be reversed, and the cause remanded for another trial. If the remittitur is filed, the judgment of affirmance will stand.

Application overruled conditionally.