35 So.2d 97

**SCHOCK et al. v. BEAR et al.**

**1 Div. 293.**

Supreme Court of Alabama.

March 18, 1948.

Rehearing Denied May 13, 1948.

Johnston, McCall & Johnston, of Mobile, for appellants.

Ralph G. Holberg, Jr., of Mobile, for appellees.

STAKELY, Justice.

This is an action for fraud in which plaintiffs claim that the defendants, by false and fraudulent representation, induced the plaintiffs to relinquish their leasehold interest in and to certain real property at No. 12 North Cedar Street, Mobile, Alabama, to the damage of plaintiffs. The alleged misrepresentation was in substance that the improvements on the property had been condemned. Trial of the case resulted in a verdict and judgment for the plaintiffs. Hence this appeal.

I. It is claimed that the court should have given the affirmative charge for the defendants because the proof did not support the allegations of the complaint as to the lease in effect between the parties at the time of the alleged misrepresentation. In this connection it should be kept in mind that both pleadings and proof showed that the alleged misrepresentation was made on towit December 28, 1945. The proof showed a lease between Vera H. Schock as lessor and the Bear Sales Company as lessee dated August 1, 1944, for the term of 24 months beginning August 1, 1944, and ending August 1, 1946. The proof showed that according to a letter from defendants to plaintiffs dated July 3, 1945, the plaintiffs' right to possession as tenant had been contracted and paid through August 31, 1946. The proof further showed that the plaintiff originally went into possession under a lease dated August 8, 1942, for a term beginning August 10, 1942, and terminating August 10, 1944.

The allegations of counts 2 and 3 show that the defendants owned the property and that the plaintiff was occupying the premises as tenant and the plaintiff's right to possession as tenant had been contracted for and paid through the 31st day of August, 1946, in accordance with the terms and conditions of a letter from the defendants to the plaintiff dated July 3, 1945. This letter which was attached as an exhibit acknowledged receipt by the defendants from the Bear Sales Company of rent from June 1, 1945, through August 31, 1946. We think that there is no merit in this contention as to counts 2 and 3 because the proof clearly supports the allegations showing that the lease dated August 1, 1944, was in force and effect at the time of the alleged misrepresentation in December, 1945. It does not seem to us that the receipt evidenced by the letter attached as Exhibit "A" showing that the rent had been paid for an additional month shows a contract at variance with the contract alleged in the complaint.

It is true that in count 1 the allegations show a lease made in 1942 and while we think that the allegations for the purposes of the present discussion could be construed to show an extension or renewal of the original lease, so as to make it ef-

fective in December, 1945, it is enough to say here that there was no request for the affirmative charge as to count 1. Charge 28 is too garbled in its language to be considered an appropriate charge as to count 1. Obviously charges requesting the affirmative charge without reference to any particular count of the complaint cannot be considered here because in considering whether the court was in error such charges will be referred to counts of the complaint under which the charges were properly refused. We do not think that there was any error as to the point under discussion.

■ II. It is argued that the defendants were entitled to the affirmative charge because the proof fails to support the allegation of each count of the complaint that the defendants were the owners of the premises known as 12 North Cedar Street in the City of Mobile and that plaintiffs were their tenants of the premises. The evidence is undisputed that Vera Schock was the owner of the property on August 8, 1942, when the original lease was made between her as lessor and the plaintiffs as lessees. She testified that she conveyed the property to her husband J. A. Schock in April, 1944. There was other evidence tending to show that from that time she ceased to be the owner of the property. We think, however, that there was sufficient evidence for the jury to determine that she did not give up her interest in t' e property in April, 1944. No deed in which she conveyed the property to her husband was introduced in evidence. The lease which was introduced in evidence and which was dated June, 1944, after the alleged conveyance in April, 1944, represented Vera Schock as the owner of the property and defendant J. A. Schock executing the lease as her agent. A letter written to the plaintiff on the 4th day of December, 1945, with reference to the condemnation of the building on the premises consistently uses the words "we" and "ours", indicating an interest of both defendants in the property. It is signed, "Respectfully yours, By.———, J. A. Schock." The receipts dated June 6, 1944, and June 3, 1945, are signed by both J. A. Schock and Vera H. Schock. The jury had the right to find that after April, 1944, when she claims to have conveyed the property, she was representing herself in various writings as being the owner of the property. But it is claimed that if she did not convey to her husband in April, 1944, then he had no interest in the property. As pointed out, there were no deeds or conveyances in evidence to show who held title to the property and under all the circumstances we think that it was a question for the jury as to whether one or the other or both were owners of the property. We do not consider the court was in error in refusing the affirmative charge on this theory.

■ III. It is insisted that there was a fatal variance between the proof and the allegations of the complaint that the plaintiffs were occupying said premises as tenants thereof. It is claimed that the proof shows only Joseph Bear as the occupant. We do not agree with the contention. The case was styled Joseph Bear and Idele A. Bear, partners, trading and doing business as Bear Sales Company, a Partnership, Plaintiffs, v. J. A. Schock and Vera H. Schock, Defendants. The proof showed that the Bear Sales Company was a partnership composed of Joe Bear and Idele A. Bear. The leases were made by the Bear Sales Company as party of the second part. The evidence is undisputed that the property was held under the written lease. Certainly we think it was at least a question for the jury as to whether or not the partnership which included Joe Bear and Idele Bear occupied the property under the lease.

■ IV. The leasehold interest in the premises at the time of the alleged misrepresentation in December, 1945, was in Bear Sales Company. The suit was filed as hereinabove shown. It is claimed that since there was no evidence as to who composed the partnership of Bear Sales Company, plaintiffs have shown no right, title or interest in or to the leasehold interest and hence no interest in or rights to the property. There is no merit in this contention. As stated, the proof showed that the Bear Sales Company was a partnership composed of Joe Bear and Idele A. Bear.

■ V. It is argued that the defendants were entitled to the general affirmative charge as to counts 2 and 3 because the proof did not correspond with the allegations as to the false representations. The allegations of counts 2 and 3 are similar as to the matter now under consideration. We quote the pertinent part as follows:

"* * * Defendants did notify the plaintiffs in writing that the improvements on the premises located at 12 North Cedar Street, in the City and County of Mobile, State of Alabama, had been condemned by the City of Mobile by and through the office of City Building Inspector and that said premises as a result of such condemnation were unfit for further use and that the Defendants would demolish said improvements."

The alleged misrepresentation may be divided as follows: (1) The improvements on the premises had been condemned, (2) and the said premises as the result of such condemnation were unfit for further use and (3) that the defendants would demolish said improvements. It is insisted that there was no proof to support the second alleged misrepresentation, namely that said premises as the result of such condemnation were unfit for further use. The letter written by defendants under date of December 4, 1945, tends to show that the property had been condemned. The proof shows that in various telephone conversations Mr. Schock urged Mr. Bear to vacate the building on the threat that if he did not do so immediately, a crew was going to start tearing the buildings down whether the merchandise was moved out of there or not. The evidence taken together tends to show that Schock represented to the plaintiffs that the building had been condemned and would be torn down and that the plaintiffs stayed in the same at their risk. We think it reasonable that when a landlord states to his tenant that the building which he is occupying has been condemned, he says by necessary inference and in substance that the building is, therefore, unfit for further use. Cartwright v. Hughes, 226 Ala. 464, 147 So. 399. We do not consider there is any merit in the point under discussion.

■ VI. The court gave to the jury written charge No. 10 requested by the plaintiff. Without considering other aspects of this charge, it is enough to say that this charge is defective since it charges the jury that if the defendant's acts constitute gross fraud etc., "the plaintiff is entitled to recover punitive damages." There is no doubt that in actions of this kind, punitive damages are recoverable where the defendant is guilty of gross fraud. Southern Building & Loan Ass'n v. Dinsmore, 225 Ala. 550, 144 So. 21. However, punitive damages are not recoverable as a matter of right but are a matter of discretion with the jury. In the case of Birmingham Electric Co. v. Shephard, 215 Ala. 316, 110 So. 604, 605, this court said:

"The court more than once instructed the jury, in substance, that, if defendant's motorman acted with reckless disregard of plaintiff's known position of danger on the step, then she would be entitled to recover punitive damages, meaning such damages as were claimed in the second count of the complaint—damages, not merely compensatory, but damages to punish the defendant and serve as a warning to other carriers in similar situations. This was error. True the court added some qualification, and the charge on this point must be construed as a whole; but, so construed, it unfortunately seems to leave the amount only of punitive damages, rather than the question whether they should be assessed at all, to the discretion of the jury. The cases hold that punitive damages are not recoverable as matter of right, but their imposition is discretionary with the jury, acting with regard to the enormity of the wrong and the necessity of preventing similar wrongs. * * *"

See also Lehigh Portland Cement Co. v. Sharit, 234 Ala. 40, 173 So. 386, 388; Louisville & N. R. R. Co. v. Bizzell, 131 Ala. 429, 437, 30 So. 777; Coleman v. Pepper, 159 Ala. 310, 49 So. 310.

■ The prejudicial effect of charge 10 is not corrected by the oral charge of the court. In the case of Lehigh Portland Cement Co. v. Sharit, supra, this court said: "Nor was the error cured by the oral charge of the court which stated the

correct rule. The two instructions were clearly conflicting and the jury were left without a guide in this respect."

For the error indicated the judgment of the lower court is reversed and the cause is remanded.

Reversed and remanded.

GARDNER, C. J., and FOSTER and LAWSON, JJ., concur.